O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

Case No. CV16-00352 (VEB)

LUANNE DANIELLE DUNNING,

          Plaintiff,

vs.

NANCY BERRYHILL, Acting
Commissioner of Social Security,

          Defendant.

DECISION AND ORDER

## I. INTRODUCTION

In February of 2012, Plaintiff Luanne Danielle Dunning applied for Disability Insurance benefits under the Social Security Act. The Commissioner of Social Security denied the application.[1]

---

[1] On January 23, 2017, Nancy Berryhill took office as Acting Social Security Commissioner. The Clerk of the Court is directed to substitute Acting Commissioner Berryhill as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

Plaintiff, by and through her attorney, Patricia L. McCabe, Esq. commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 11, 12). On March 28, 2017, this case was referred to the undersigned pursuant to General Order 05-07. (Docket No. 30).

## II. BACKGROUND

Plaintiff applied for Disability Insurance benefits on February 26, 2012, alleging disability beginning April 30, 2011. (T at 23).[2] The application was denied initially and on reconsideration. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").

On September 25, 2013, a hearing was held before ALJ Philip Simon. (T at 85). Plaintiff appeared with her attorney and testified. (T at 89-106, 117-19). The ALJ also received testimony from Carmen Roman, a vocational expert. (T at 107-112). A second hearing was held on February 10, 2014. Plaintiff appeared with her attorney and testified. (T at 49-53, 56, 81-82). The ALJ also received testimony

---

[2] Citations to ("T") refer to the administrative record at Docket No. 15.

DECISION AND ORDER – DUNNING v BERRYHILL CV16-00352-VEB

from Dr. David Huntley, a medical expert (T at 53-74), and Gregory Jones, a vocational expert. (T at 75-81).

On April 8, 2014, the ALJ issued a written decision denying the application for benefits. (T at 17-38). The ALJ's decision became the Commissioner's final decision on November 12, 2015, when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

On January 15, 2016, Plaintiff, acting by and through her counsel, filed this action seeking judicial review of the Commissioner's denial of benefits. (Docket No. 1). The Commissioner interposed an Answer on May 19, 2016. (Docket No. 14). Plaintiff filed a supporting memorandum on August 10, 2016. (Docket No. 23). The Commissioner filed an opposition memorandum on October 21, 2016. (Docket No. 28). Plaintiff filed a reply on November 7, 2016. (Docket No. 29).

After reviewing the pleadings, the parties' pleadings, and administrative record, this Court finds that the Commissioner's decision must be reversed and this case remanded for further proceedings.

### III. DISCUSSION

**A.    Sequential Evaluation Process**

The Social Security Act ("the Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable

DECISION AND ORDER – DUNNING v BERRYHILL CV16-00352-VEB

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if any impairments are of such severity that he or she is not only unable to do previous work but cannot, considering his or her age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment(s)

with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work which was performed in the past. If the claimant is able to perform previous work, he or she is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity (RFC) is considered. If the claimant cannot perform past relevant work, the fifth and final step in the process determines whether he or she is able to perform other work in the national economy in view of his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the

Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" that the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**B.    Standard of Review**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

"The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review,

the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## C. Commissioner's Decision

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 30, 2011, the alleged onset date, and met the insured status requirements of the Social Security Act through December 31, 2017 (the "date last insured"). (T at 21). The ALJ found that Plaintiff's pituitary tumor, healed fracture

of the distal left fibula (with malrotation and traumatic arthritis of the left ankle), history of asthma, obesity, depressive disorder NOS, and general anxiety disorder were "severe" impairments under the Act. (Tr. 23).

However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 24).

The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk for 2 hours in an 8-hour workday (15-20 minutes at a time) and sit for 6 hours in an 8-hour workday (40-60 minutes at a time). The ALJ found that Plaintiff could use her right and left hands frequently; use her right foot frequently and her left foot occasionally; could not climb stairs/ramps/ladders/ropes/scaffolds; could occasionally stoop, kneel, crouch, crawl, and balance. She cannot work around heights or dangerous moving machinery and must avoid more than occasional exposure to irritants, extreme cold, and vibration. The ALJ found Plaintiff capable of simple, repetitive tasks, consistent with unskilled work (T at 25-26).

The ALJ concluded that Plaintiff could not perform her past relevant work as a hair stylist. (T at 31). Considering Plaintiff's age (41 years old on the alleged onset date), education (limited), work experience, and residual functional capacity,

the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform. (T at 31-32).

Accordingly, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act between April 30, 2011 (the alleged onset date) and April 8, 2014(the date of the decision) and was therefore not entitled to benefits. (T at 33). As noted above, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

**D.    Disputed Issues**

As set forth in the parties' memoranda, Plaintiff offers three (3) main arguments in support of her claim that the Commissioner's decision should be reversed.  First, she argues that the ALJ did not appropriately weight the medical opinion evidence.   Second, Plaintiff contends that the ALJ's step two severity analysis was flawed. Third, she challenges the ALJ's credibility determination. This Court will address each argument in turn.

## IV. ANALYSIS

**A.    Medical Opinion Evidence**

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-:examining physician. *Benecke v. Barnhart*,

379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

The courts have recognized several types of evidence that may constitute a specific, legitimate reason for discounting a treating or examining physician's medical opinion. For example, an opinion may be discounted if it is contradicted by the medical evidence, inconsistent with a conservative treatment history, and/or is based primarily upon the claimant's subjective complaints, as opposed to clinical findings and objective observations. *See Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995).

An ALJ satisfies the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014)(quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*.

1.      **Dr. Kroop**

Dr. Richard Kroop, Plaintiff's treating physician, provided a letter dated October 22, 2013.  He explained that Plaintiff had been his patient for "many years" and opined that she was "totally disabled due to limitations with regard to daily activities and intractable pain." (T at 533).  Dr. Kroop described Plaintiff's pain as "constant" and "varying from 4-10 on a scale of 1-10." (T at 533).  He opined that she could not sit or stand for more than an hour or walk for more than 90 minutes and she was "absolutely prohibited" from lifting, bending, or carrying any weight. (T at 533).

Dr. Kropp reported that Plaintiff had "intractable headaches," which occurred weekly, along with recurrent asthma, not well controlled. (T at 533).  A bone fracture in her left lower extremity did not fully heal, causing a gait disorder and increase in low back pain. (T at 533).  He noted that Plaintiff was being treated for seizure disorder, but continued to have weakness in her hands and forearms, causing problems gripping or holding items and difficulty with handwriting. (T at 533).  Dr. Kropp also referenced diagnoses of pituitary adenoma, severe cervical spine degenerative disease, recurrent migraine, and persistently unstable blood pressure. (T at 533).  He opined that Plaintiff's impairments also caused her severe depression with frequent anxiety attacks. (T at 533).

### 2.    Dr. Bleecker

Dr. Harlan Bleecker, an orthopedist, performed a consultative examination in November of 2013. Dr. Bleecker opined that Plaintiff could lift/carry 10 pounds occasionally and 10 pounds frequently; could sit for 6 hours in an 8-hour day (and for 40-60 minutes at a time); could stand and walk 15-20 minutes at a time; and could walk up to 2 hours in an 8-hour day. (T at 559). Dr. Bleecker believed Plaintiff did not need a cane; could frequently reach, handle, finger, push and pull with both hands; could frequently use her right foot and occasionally use her left foot; could not climb stairs, ramps, ladders, or scaffolds; and can occasionally stomp, kneel, crouch, crawl, or balance. (T at 559).

Dr. Bleecker concluded that Plaintiff could not perform activities such as shopping, walking a block at a reasonable pace on rough or uneven surface, or climbing a few steps at a reasonable pace with the use of a handrail. (T at 560). However, he opined that Plaintiff could ambulate without the use of an assistive device, could use public transportation, and could prepare a meal and take care of herself. (T at 560).

### 3.    Dr. Huntley

Dr. David Huntley, a non-examining medical expert, testified at the second administrative hearing. He began by telling the ALJ that, while he had reviewed the

record, he found Dr. Krupp's notes "not legible," explaining that he could not read about "80 percent of them." (T at 53). However, Dr. Huntley continued with his assessment, noting that Plaintiff had a pituitary tumor, possible peripheral neuropathy (carpal tunnel), and some sort of undefined seizure issue. (T at 54). He endorsed Dr. Bleecker's finding of status-post fracture of the left fibula and post-traumatic arthritis of the left ankle. (T at 55). He also noted evidence of obesity and references in the record to migraines and asthma. (T at 55-56).

Dr. Huntley did not agree with Dr. Kroop's very restrictive assessment of Plaintiff's limitations and indicated that he was more inclined to "defer" to Dr. Bleecker's findings. (T at 65). However, Dr. Huntley even still found Dr. Bleecker's assessment "very guarded" and "a little generous (to Plaintiff)." (T at 69). He explained that he could not find record support for the more restrictive findings set forth in Dr. Kroop's opinion or in certain aspects of Dr. Bleecker's report. (T at 69).

Dr. Huntley concluded that Plaintiff could occasionally lift 50 pounds and frequently lift up to 20 pounds, stand for half an hour, probably stand for 6 hours with breaks, sit without limitation, could use her left foot occasionally. (T at 70-71). He advised no climbing of ladders, ropes, or scaffolds and no more than two flights of stairs, with only occasional climbing of ramps. (T at 71). He limited Plaintiff to occasional kneeling and crouching, but found no restrictions with regard to upper

DECISION AND ORDER – DUNNING v BERRYHILL CV16-00352-VEB

extremities. (T at 71-72). Dr. Huntley stated that Plaintiff should never work at heights or around dangerous machinery and should avoid cold and vibration. (T at 72).

### 4.    Analysis

The ALJ explained that his RFC determination was based "primarily" on the assessment of Dr. Bleecker, the consultative examiner. (T at 26). However, the ALJ did not adopt Dr. Bleecker's opinion in total, and agreed with Dr. Huntley, the non-examining medical expert, that certain aspects of Dr. Bleeker's opinion (i.e. those portions finding Plaintiff unable to shop, walk a block at a reasonable pace, or climb a few steps at a reasonable pace with a handrail) were "overly generous" to Plaintiff and not supported by objective evidence. (T at 26). The ALJ adopted the environmental limitations assessed by Dr. Huntley, but generally afforded "greater weight" to Dr. Bleecker's assessment. (T at 27).

The ALJ rejected the opinion of Dr. Kroop, the treating physician. The ALJ found Dr. Kroop's assessment not supported by the objective evidence and inconsistent with the conservative course of treatment. The ALJ also found Dr. Kroop's opinion conclusory and inadequately supported by the clinical notes. (T at 28).

For the following reasons, this Court finds the ALJ should have further developed the record and erred in discounting Dr. Kroop's opinion. There can be no question that Dr. Kropp's opinion, as Plaintiff's treating physician, was presumptively entitled to deference. In disregarding that opinion, the ALJ relied primarily on the opinions of Dr. Bleecker and Dr. Huntley. However, it appears Dr. Bleecker did not review Dr. Kroop's treatment notes or assessment. (T at 557). Dr. Huntley repeatedly complained that he was not able to read Dr. Kroop's treatment notes. Indeed, the *very first thing* Dr. Huntley told the ALJ was that he could not read about "80 percent" of Dr. Krupp's notes and that he felt that was a "problem." (T at 53). Then, at two additional points during his testimony, Dr. Huntley made it clear that the illegible treatment notes made it difficult for him to assess Plaintiff's limitations – "[A]gain, I don't have a lot of confidence in the handwritten records there … I mean, there might be something there I don't know" (T at 59) "So I just don't – I think all in all the record wouldn't necessarily support that from what I can read. You know, the trouble is I can't read her general practitioner's notes." (T at 69).

Notwithstanding these concerns, the ALJ pressed on, asking Dr. Huntley to make assessments and then relying, in part, on those assessments in determining Plaintiff's RFC. The ALJ never asked Dr. Huntley whether his confidence in his

DECISION AND ORDER – DUNNING v BERRYHILL CV16-00352-VEB

ability to assess Plaintiff's limitation was compromised by the legibility problem, although that clear seems to be what Dr. Huntely was trying to communicate to the ALJ. This was error.

There is no question that "the ALJ has a duty to assist in developing the record." *Armstrong v. Commissioner of Soc. Sec. Admin.*, 160 F.3d 587, 589 (9th Cir. 1998); 20 C.F.R. §§ 404.1512(d)-(f); *see also Sims v. Apfel*, 530 U.S. 103, 110-11, 147 L. Ed. 2d 80, 120 S. Ct. 2080 (2000) ("Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . . ."). This duty includes an obligation to re-contact a treating physician when the basis for his or her opinion is unclear. *See* SSR 96-5p ("[I]f the evidence does not support a treating source's opinion . . . and the [ALJ] cannot ascertain the basis of the opinion from the case record, the [ALJ] must make every reasonable effort to re-contact the source for clarification of the reasons for the opinion.").

The ALJ found that Dr. Kroop's "notes fail[ed] to relate his opinion to either objective findings or specific clinical observations." (T at 28). However, the ALJ did not make specific reference to Dr. Kroop's notes and does not indicate whether the ALJ, unlike Dr. Huntley, was able to decipher the notes. The ALJ found that the opinions of Dr. Bleecker and Dr. Huntley were supported by "better explanations."

(T at 28). This is a debatable point, as Dr. Kroop's October 22, 2013 letter is actually rather detailed (T at 533). However, this Court would be obliged to defer to the ALJ's conclusion if the ALJ had appropriately accounted for the legibility problem.

Here, the ALJ did not even acknowledge the issue. At a minimum, the ALJ was obliged to state that either he did not have the same difficulty deciphering the notes or to explain why he did not share Dr. Huntley's view that the inability to read the clinical notes of Plaintiff's long-time treating physician was a "problem." If the ALJ had offered such an explanation, and if that explanation was supported by substantial evidence, this Court would be bound to defer to it. However, no such explanation was provided and this Court finds that this is an error requiring remand.

In sum, the treating physician's opinion was too important to disregard without an adequate understanding of his treatment notes. This was a significant omission as neither of the medical experts relied upon by the ALJ was able to base his opinion on a review of the clinical notes of Plaintiff's long-time treating physician (Dr. Bleecker apparently did not receive any paper records and Dr. Huntley was not able to read the treatment notes). Dr. Kroop's opinion was entitled to deference and should not have been rejected without this issue being resolved. This constituted a legal error and a remand is required. *See Ghokassian v. Shalala*,

DECISION AND ORDER – DUNNING v BERRYHILL CV16-00352-VEB

41 F.3d 1300, 1303 (9th Cir. Cal. 1994)("[W]e also hold that the ALJ committed a *legal* error when he failed to grant deference to the conclusions [of claimant's treating physician]")(emphasis in original).

Moreover, the ALJ summarily concluded that Dr. Kroop's restrictive assessment was contradicted by "his own conservative treatment" of Plaintiff. The fact that a claimant received only conservative treatment is a specific and legitimate reason to reject an opinion the impairment is disabling. *See Johnson v. Shalala*, 60 F.3d 1428,1434 (9th Cir. 1995). However, the ALJ "cannot fault Plaintiff for failing to pursue non-conservative treatment options if none existed." *See Perez v. Colvin*, No EDCV 14-2626, 2016 U.S. Dist. LEXIS 44230, at *17 (C.D. Cal. Mar. 31, 2016)(citing *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010). In other words, the ALJ errs where, as here, the limitations are discounted based on "conservative" treatment without any discussion of alternative, more robust treatments that would be expected to address more significant limitations. *See Gentry v. Colvin*, 2013 U.S. Dist. LEXIS 168342 (E.D. Cal. 2013)("The fact that treatment may be routine or conservative is not a basis for finding subjective symptom testimony unreliable absent discussion of the additional, more aggressive treatment options the ALJ believes are available.").

DECISION AND ORDER – DUNNING v BERRYHILL CV16-00352-VEB

On remand, the ALJ should re-contact Dr. Kroop to either provide more legible copies of his notes or to provide more specific references to those notes in support of his assessment.

**B.  Severity of Headaches**

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a "severe" impairment. See 20 C.F.R. §§ 404.1520(c), 416.920(c).  The fact that a claimant has been diagnosed with and treated for a medically determinable impairment does not necessarily mean the impairment is "severe," as defined by the Social Security Regulations. *See, e.g.*, *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985). To establish severity, the evidence must show the diagnosed impairment significantly limits a claimant's physical or mental ability to do basic work activities for at least 12 consecutive months. 20 C.F.R. § 416.920(c).

The step two analysis is a screening device designed to dispose of *de minimis* complaints. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "[A]n impairment is found not severe . . . when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Yuckert v. Bowen*, 841 F.2d 303 (9th Cir. 1988) (quoting SSR 85-28).  The claimant bears the burden of proof at this stage and

the "severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs." SSR 85-28. Basic work activities include: "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers, and usual work situations." *Id.*

In this case, the ALJ concluded that Plaintiff's headaches were a non-severe impairment. (T at 23). Plaintiff challenges this finding. The treatment records document frequent complaints of headaches. (T at 384-87, 389-90, 522-24, 530, 563, 567). In his letter of October 2013, Dr. Kroop reported that Plaintiff had "intractable headaches on a weekly basis." (T at 533). The ALJ found "no objective evidence" to support the allegation of disabling headaches. (T at 23). He relied on Dr. Huntley's testimony that he found no objective evidence or treatment for severe headaches, as well as his testimony that pituitary tumors of the type Plaintiff had "do not usually cause headaches." (T at 23).

Here, again, however, the ALJ's finding is impacted by the legibility problem. When addressing the headache issue, Dr. Huntley said "So, I mean, if the client – again, I don't have a lot of confidence in the handwritten records there, I mean, as a neurologist. I mean, there might be something there I don't know." (T at 59). The

DECISION AND ORDER – DUNNING v BERRYHILL CV16-00352-VEB

ALJ did not acknowledge Dr. Huntley's concern about the records or the apparent lack of confidence it caused in his opinion. In other words, Dr. Huntley found no objective evidence of a severe headache issue, but qualified that finding because he could not read the vast majority of the treatment notes. The ALJ then cited (and relied heavily on) the "lack of objective evidence" finding, without addressing the legibility limitation. This was error and the severity of Plaintiff's headaches should be revisited on remand.

**C.  Credibility**

A claimant's subjective complaints concerning his or her limitations are an important part of a disability claim. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004)(citation omitted). The ALJ's findings with regard to the claimant's credibility must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Leste*r, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

DECISION AND ORDER – DUNNING v BERRYHILL CV16-00352-VEB

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. § 404.1529(b), 416.929; SSR 96-7p.

In this case, Plaintiff testified as follows:

She has been disabled since April 30, 2011, due to an improperly healed broken left leg, which causes constant pain in her lower extremity; headaches; depression; and anxiety. (T at 289). Various pain relief efforts have been attempted, but have been unsuccessful. (T at 92). She can walk for 15-20 minutes at a time, stand for 15-20 minutes at a time, and sit for about 45 minutes, but would need to shift positions. (T at 105-106). She is able to shower, walk her dog, read/paint for about 15 minutes at a time, and do light chores (dusting, dishes, and small loads of laundry). (T at 102-103). She does not drive. (T at 103). Her social life is limited by depression and anxiety. (T at 96).

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements regarding the intensity, persistence, and limiting effects of the symptoms were not fully credible. (T at 29).

DECISION AND ORDER – DUNNING v BERRYHILL CV16-00352-VEB

The ALJ's credibility analysis is impacted by the legibility issue. The ALJ found that the treatment records "appear to be" inconsistent with Plaintiff's subjective allegations (T at 30), but did not explain how or why that is the case. The ALJ did not explain whether or how he, unlike Dr. Huntley, was able to decipher a majority of the treatment notes. The ALJ also found that Plaintiff had received "only relatively routine and conservative medical treatment." (T at 30). Although the ALJ listed some alternative, more aggressive treatment that might have been expected for Plaintiff's alleged mental health impairments (e.g. counseling, therapy), the ALJ did not explain what additional treatments he would have expected Plaintiff to receive for her physical impairments and, in particular, the pain she experienced as a result of the improperly healed injury to her left lower extremity. *See Slover v. Comm'r of Soc. Sec. Admin*., No. CV-10-258-HZ, 2011 U.S. Dist. LEXIS 36459, 2011 WL 1299615, at * 4 (D. Or. Apr. 4, 2011)(noting that "[t]he fact that treatment may be routine or conservative is not a basis for finding subjective symptom testimony unreliable absent discussion of the additional, more aggressive treatment options the ALJ believes are available").

In addition, Plaintiff's testimony was corroborated by the opinion of Dr. Kroop, her long-time treating physician. As outlined above, the ALJ's rejection of

that opinion was inadequately supported, which thus impacted his consideration of Plaintiff's credibility. This issue will need to be revisited on remand.

**D.    Remand**

In a case where the ALJ's determination is not supported by substantial evidence or is tainted by legal error, the court may remand the matter for additional proceedings or an immediate award of benefits. Remand for additional proceedings is proper where (1) outstanding issues must be resolved, and (2) it is not clear from the record before the court that a claimant is disabled. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

Here, this Court finds that remand for further proceedings is warranted. The consultative examiner, testifying medical expert, and State Agency review consultants all offered assessments tending to support the ALJ's RFC determination. Because the opinion of Plaintiff's long-time treating physician was not properly addressed, as outlined above, a remand is necessary. However, there is a question as to whether Plaintiff is actually disabled. In sum, the treatment history is obscured by the illegibility of Dr. Kroop's clinical notes. The ALJ did not take sufficient action to clarify that issue. However, it is possible that, once clarified, the treatment history will still not be supportive of a disability finding. As such, a remand for further proceedings is the appropriate remedy. *See Strauss v. Comm'r of Soc. Sec.*, 635 F.3d

1135, 1138 (9th Cir. 2011)("Ultimately, a claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be.").

# V. ORDERS

IT IS THEREFORE ORDERED that:

Judgment be entered REVERSING the Commissioner's decision and REMANDING this action for further proceedings consistent with this Decision and Order, and it is further ORDERED that

The Clerk of the Court file this Decision and Order, serve copies upon counsel for the parties, and CLOSE this case, without prejudice to a timely application for attorneys' fees and costs.

DATED this 9th day of May, 2017,

/s/Victor E. Bianchini
VICTOR E. BIANCHINI
UNITED STATES MAGISTRATE JUDGE

DECISION AND ORDER – DUNNING v BERRYHILL CV16-00352-VEB